UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 20-CV-4647 |
| v. | ) | (NGG) (CLP) |
| | ) | |
| VILLAGE REALTY OF STATEN | ) | |
| ISLAND LTD. and DENIS DONOVAN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CONSENT DECREE AND JUDGMENT

### I.    Introduction

1.      The United States initiated this action on September 30, 2020, against Defendants Village Realty of Staten Island Ltd. and Denis Donovan (collectively "Defendants") to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601 *et seq.* ("FHA").

2.      Defendant Village Realty of Staten Island Ltd. ("Village Realty") is a New York limited liability company which operates as a licensed real estate brokerage and offers properties for sale in Staten Island, New York.  Prior to April 2019, Village Realty also offered properties for rent in Staten Island, New York.  The units presently offered for sale, and previously offered for rent, are "dwellings" within the meaning of the FHA, 42 U.S.C. § 3602(b).

3.      At all times relevant to the Complaint, Defendant Denis Donovan was an independent contractor associated with Village Realty as a licensed real estate agent.  The United

1

States alleges that Donovan acted as a sales and rental agent for Village Realty and had the authority to act on behalf of Village Realty.

4.     In 2018, the United States Department of Justice conducted testing to evaluate compliance with the Fair Housing Act by Village Realty and Donovan.  Testing is a simulation of a housing transaction that compares the information, service, and treatment given by a housing provider to similarly-situated home seekers – in this case, differentiated by race – to determine whether illegal discrimination is occurring.  The United States alleges that the testing showed that Donovan engaged in various practices evidencing less favorable treatment of African American testers compared to white testers, including the following:

     a.   Donovan told African Americans about fewer units available for rent than he informed white persons about;

     b.   Donovan offered white persons the opportunity to inspect available rental units the same day as their walk-in visit to Village Realty, while informing African Americans that they could inspect units only at a later date;

     c.   Donovan offered rental discounts to white persons that were not offered to African Americans;

     d.   Donovan offered white persons rental units in both overwhelmingly white (*i.e.,* greater than 80% white) and more integrated neighborhoods, while primarily offering African Americans units only in more integrated neighborhoods;

     e.   Donovan made encouraging comments to white persons and informed them of desirable features of available rental units and the surrounding community, while

failing to make such comments to African Americans and making discouraging comments about some of the units to African Americans; and

f.  Donovan appeared willing to waive certain requirements for white persons but not African Americans, by telling African Americans they would need to sign a disclosure form in order to inspect units and describing other rental requirements such as credit checks, while not informing white persons of such requirements. On one occasion, Donovan showed a rental unit to a white person without first requiring him to sign a disclosure form.

5.  The United States, in its Complaint, alleges that Donovan has:

a.  Refused to negotiate for the rental of, or otherwise made unavailable or denied dwellings to persons because of race or color, in violation of Section 804(a) of the Fair Housing Act, 42 U.S.C. § 3604(a); and

b.  Discriminated against persons in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services in connection with such a dwelling, because of race or color, in violation of Section 804(b) of the Fair Housing Act, 42 U.S.C. § 3604(b).

6.  The United States, in its Complaint, claims that Donovan has:

a.  Engaged in a pattern or practice of resistance to the full enjoyment of rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, et seq.; and/or

b.  Denied to a group of persons rights granted by the Fair Housing Act, 42 U.S.C. §§ 3601, et seq., which denial raises an issue of general public importance.

7.     The United States alleges that Village Realty is liable for the conduct of Donovan described above because he was acting as an employee and/or agent of Village Realty and within the scope of his employment and/or agency.

8.     Village Realty and Donovan deny all of the allegations of wrongdoing and liability as set forth by the United States both in the Complaint and herein.  Village Realty and Donovan represent that each has always been firmly committed to fair housing and their policy is to refuse to engage in or assist others to engage in housing discrimination of any kind.  Village Realty and Donovan further represent that their long standing policy is to practice and enforce fair housing in the communities in which each does business.  Village Realty and Donovan have consented to the terms of this Consent Decree notwithstanding their denial of any wrongdoing in the past.  Village Realty further represents that it has maintained a non-discrimination policy for the agency and all of its employees, independent contractors, and representatives, to ensure compliance with federal, state, and local anti-discrimination laws and has required each employee, independent contractor, and representative to acknowledge in writing receipt of Village Realty's non-discrimination policy.

9.     The parties stipulate that the United States District Court for the Eastern District of New York has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §3614(a).

10.     The parties seek to resolve the claims against Village Realty and Donovan without the expense, delays, risks and uncertainties of litigation.  By entering into this Consent Decree, Village Realty and Donovan do not admit the truth of any claims made against them by the United States in the Complaint or in this Consent Decree.

11.     Therefore, the parties consent to the entry of this Consent Decree.

**Wherefore, it is ORDERED, ADJUDGED and DECREED:**

## II.     Scope of Decree

12.     Village Realty has represented to the United States that, as of April 2019, it is no longer engaged in the business of offering listings for dwelling units for rent.  Village Realty has further represented that it has no current plans to reenter the rental market as a listing agent.

13.     Donovan has represented to the United States that, as of April 2019, he is no longer engaged in the business of offering dwelling units for rent.  Donovan further represents that he has no current plans to reenter the rental market as a rental agent.

14.     Should either Village Realty or Donovan choose to reenter the rental market, and begin offering listings for dwelling units for rent, they shall notify the United States[1] before doing so, and the provisions of Sections IV, VII, and XI shall apply to the offering of units for rent.

## III.     Injunction

15.     Donovan, Village Realty and Village Realty's agents, employees, independent contractors, successors, and all other persons in active concert or participation with any of them, are hereby enjoined, with respect to the sale or rental of dwellings, from:

> (a) Refusing to sell or rent a dwelling, refusing or failing to provide or offer information about a dwelling, refusing to negotiate for the sale or rental of a dwelling, or otherwise making unavailable or denying a dwelling to any person

---

[1]   All material required by this Consent Decree to be submitted to the United States shall be sent via overnight delivery addressed as follows: Chief, Housing and Civil Enforcement Section, Civil Rights Division, U.S. Department of Justice, 150 M Street, NE, 8th Floor, Washington, DC 20002, Attn: DJ 175-52-294 and United States Attorney's Office, Attn: AUSA Rachel G. Balaban, 271 Cadman Plaza East, Brooklyn, NY 11201.  The parties may also agree to delivery electronically.

because of race or color, in violation of the Fair Housing Act, 42 U.S.C. § 3604(a); and

(b) Discriminating against any person in the terms, conditions, or privileges of the sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of race or color, in violation of the Fair Housing Act, 42 U.S.C. § 3604(b).

### IV.    Nondiscriminatory Policy and Public Notice

16.    Village Realty has adopted the New York State Department of State, Division of Licensing Services Fair Housing Notice (hereinafter "Fair Housing Notice").  Village Realty has posted the Fair Housing Notice at its office, includes the Fair Housing Notice in its e-mails and on its real estate listings, and takes steps to ensure that the Fair Housing Notice is posted at all of the residential properties for which it has the listing.  A copy of the current Fair Housing Notice is available at https://www.dos.ny.gov/licensing/docs/FairHousingNotice_new.pdf.

17.    Village Realty previously adopted a Nondiscrimination Policy and requires its employees, agents, and/or independent contractors to sign and comply with that policy while affiliated with Village Realty.  The United States has reviewed and approved the current version of the Nondiscrimination Policy as of January 2021.

18.    Village Realty agrees to maintain the Fair Housing Notice and the Nondiscrimination Policy and to continue to display and disseminate the Fair Housing Notice and the Nondiscrimination Policy as set forth in Paragraphs 16-17.

19.    During the term of this Consent Decree, Village Realty shall submit to the United States for approval any proposed changes to the Fair Housing Notice or the Nondiscrimination

Policy.  The United States shall make a determination regarding proposed changes within thirty (30) days of notice, or the proposed changes will be deemed to have been approved.

20.     Within ten (10) days of the entry of this Consent Decree, Village Realty shall provide a copy of the Fair Housing Notice and Nondiscrimination Policy to each of its employees, agents, and/or independent contractors who are responsible for providing information about, showing, or selling any residential dwelling unit, and direct them in writing to comply with those policies.

21.     Village Realty shall provide a copy of the Fair Housing Notice and Nondiscrimination Policy, and written direction to comply therewith, to each new employee, agent, and/or independent contractor with any responsibility for providing information about, showing, or selling any residential dwelling unit, within five (5) days of hiring.

22.     Within fifteen (15) days of the entry of this Consent Decree, Village Realty shall take the following steps to notify the public of its nondiscrimination policies, in addition to the steps it has already taken as set forth in Paragraph 16 with respect to the New York State Fair Housing Notice:

> (a) Include the words "Equal Housing Opportunity" and/or the fair housing logo in all sales advertising conducted by Village Realty, including its agents, independent contractors, and/or employees, in newspapers, flyers, handouts, telephone directories, and other written materials; on radio, television, internet or other media broadcasts or postings; and on all billboards, signs, pamphlets, brochures and other promotional literature; the words and/or logo shall be prominently placed and easily readable; and

7

(b) Include the following equal housing statement in sales contracts used for the sale of residential dwelling units in boldface type, using letters of equal or greater size to those of the text in the body of the document:

> We are an equal housing opportunity provider. We do not discriminate on the basis of race, color, sex, national origin, religion, disability, or familial status (having children under age 18).

## V.   Nondiscriminatory Standards and Procedures – Residential Sales

23.     Within thirty (30) days of the entry of this Consent Decree, Village Realty shall develop and submit to the United States objective, uniform, nondiscriminatory standards and procedures for informing persons about, and showing, available units for sale.  Village Realty shall implement these standards and procedures within five (5) days after the United States provides written notice to Village Realty that it does not object to their use.  These standards and procedures may be modified only if Village Realty gives written notice to the United States at least thirty (30) days before the proposed modifications are to take effect and the United States makes no objection thereto.  If the parties cannot agree on such standards and procedures, either initially or with respect to a proposed modification, either party may present the matter to the Court for resolution.

24.     The nondiscriminatory standards and procedures implemented pursuant to Paragraph 23 shall be posted at Village Realty's office, and a copy shall be provided to any person upon request.

25.     The nondiscriminatory standards and procedures discussed in Paragraph 23 shall include, but not be limited to, the following types of documents:

(a) <u>Availability Lists</u>:  Properties available for sale for which Village Realty has taken the listing from a client shall be referred to herein as "Exclusive Listings."

Exclusive Listings are listed on both Village Realty's website and the website for the Staten Island Board of Realtors ("SIBOR"), both of which are available to the public.  Village Realty will ensure that an Exclusive Listing Availability List is updated on a weekly basis which includes: (i) the addresses of all units available as Exclusive Listings, (ii) the features of each, and (iii) the listing price for each.  Village Realty, or its agents and/or employees, shall share the information on the Exclusive Listing Availability List with each person who visits or calls to inquire about the availability of dwelling units for sale.

(b) Inquiry Record:   For each prospective client who inquires in person about dwelling units for sale, Village Realty shall provide such client with an Inquiry Record or similar record and ensure it is completed.  The record shall include (i) the person's name, address, telephone number(s), and email address; (ii) race, as volunteered by the person[2]; (iii) the date(s) of visit(s) to Village Realty's office; (iv) the size or type of residential sale property requested; (v) which sales listings, if any, were provided to the person, or, if none, an explanation why none were provided; (vi) which properties presently available for sale and showing were shown to the person or, if none, an explanation why none were shown; (vii) if the person ultimately purchased a property through Village Realty, the property address and date of purchase; and (viii) the name(s) of Village Realty's representative(s) who met with the prospective purchaser.

---

[2] The Inquiry Record shall state that information about race is being collected for Fair Housing purposes.

(c) <u>Telephone Logs</u>:  Village Realty shall maintain, for all prospective clients who inquire by telephone to Village Realty's sales office about available properties for sale, a phone log that includes (i) each person's name, address, telephone number(s), and email address, if provided; (ii) the size or type of residential sale property for which the prospective client requested information; (iii) which Exclusive Listings, if any, were provided, or if no information was provided, an explanation; (iv) the date of any appointment scheduled for the caller to view a residential property for sale, or, if no appointment was scheduled, an explanation; and (v) the name(s) of Village Realty's representative(s) who spoke with the caller.  If a representative of Village Realty subsequently meets with a caller to view an Exclusive Listing residential property that is for sale, the Inquiry Record described above at Paragraph 25(b) must also be completed.

## VI.    Nondiscriminatory Standards and Procedures – Residential Rentals

26.    Should either Village Realty or Donovan choose to reenter the residential rental market, and begin offering dwelling units for rent during the term of this Consent Decree, they shall notify the United States and shall implement the standards and procedures set forth in this section with respect to rental units, and provide confirmation to the United States of such implementation, within thirty (30) days of the decision to begin offering dwelling units for rent. These standards and procedures may be modified only if Village Realty or Donovan gives written notice to the United States at least thirty (30) days before the proposed modifications are to take effect and the United States makes no objection thereto.  If the parties cannot agree on

such standards and procedures, either initially or with respect to a proposed modification, either party may present the matter to the Court for resolution.

27.     The nondiscriminatory standards and procedures implemented pursuant to Paragraph 26 shall be posted at Village Realty's office, and a copy shall be provided to any person upon request.

28.     The nondiscriminatory standards and procedures discussed in Paragraph 26 shall include, but not be limited to, the following types of documents:

(a) <u>Availability Lists</u>:  On a weekly basis, Village Realty and/or Donovan shall ensure that an Availability List is updated that includes (i) the addresses of all residential units available for rent for which Village Realty or Donovan has an Exclusive Listing, (ii) the features of each, (iii) the anticipated availability date of each, and (iv) the monthly rent for each.  Village Realty, or its agents or employees, and/or Donovan shall share the information on the Availability List with each person who visits or calls to inquire about the availability of dwelling units for rent.

(b) <u>Inquiry Record</u>:  For each prospective client who inquires in person about dwelling units for rent, Village Realty and/or Donovan shall provide such client with an Inquiry Record or similar record and ensure it is completed. The record shall include (i) the person's name, address, telephone number(s), and email address; (ii) race, as volunteered by the person[3]; (iii) the date(s) of visit(s); (iv) the size or type of residential rental unit and occupancy date

---

[3] *See* footnote 2, *supra*.

requested; (v) which Exclusive Listing units were offered to the person or, if none, an explanation why none were offered; (vi) which Exclusive Listing units the person was shown or, if none, an explanation why none were shown; (vii) for those who rented a unit through Village Realty or Donovan, the unit address and date of occupancy or, for those who did not rent a unit, a statement of the reason(s) why not; and (viii) the name(s) of the representative(s) of Village Realty or Donovan who met with the prospective resident.

(c) <u>Telephone Logs</u>:  Village Realty and/or Donovan shall maintain, for all prospective residents that inquire by phone about residential units available for rent, a phone log that includes (i) each person's name, address, telephone number(s), and email address, if provided; (ii) the size or type of residential rental unit and occupancy date requested; (iii) the availability and pricing information provided or, if no information was provided, an explanation why not; (iv) the date of any appointment scheduled for the caller to view a unit or, if no appointment was scheduled, an explanation why not; and (v) the name(s) of the representative(s) of Village Realty or Donovan who spoke with the caller.  If a representative subsequently meets with a caller to view a unit, he/she must also complete an Inquiry Record as described above at Paragraph 28(b).

## VII.    Mandatory Training

29.    Within five (5) days of the entry of this Consent Decree, Defendant Village Realty shall provide a copy of this Consent Decree to all agents and employees involved in providing information about, showing, or selling any residential dwelling unit.  Village Realty shall secure a signed statement from each such agent or employee acknowledging that he or she has received and read the Consent Decree, the Fair Housing Notice, and the Nondiscrimination Policy, has had the opportunity to have questions answered about the Consent Decree, the Fair Housing Notice, and the Nondiscrimination Policy, and agrees to abide by the relevant provisions of the Consent Decree, the Fair Housing Notice, and the Nondiscrimination Policy.  This statement shall be in the form of Appendix A.

30.    Village Realty and its real estate professionals, including Donovan, are all members of the Staten Island Board of REALTORS ("SIBOR"), which is affiliated with the National Association of REALTORS ("NAR"), and the New York State Association of Realtors ("NYSAR"), and must adhere to SIBOR, NAR and NYSAR requirements, which include training in fair housing.  In addition, Donovan and all other real estate professionals licensed in New York are required to take a component of fair housing training every two years.  Within thirty (30) days of the entry of this Consent Decree, for all agents and employees of Village Realty with any responsibility for providing information about, showing, or selling residential dwelling units, including Donovan, Village Realty shall provide proof of attendance at an educational program that provides instruction regarding their obligations under the federal Fair Housing Act, with specific emphasis on discrimination on the basis of race or color.  The course must be approved by NAR and the New York Department of State as satisfying applicable licensing requirements,

and the trainer must be independent of Village Realty or its counsel. The course does not have to be in person and can be done remotely. Village Realty shall obtain from the trainer certificates of attendance, executed for each individual who received the training, confirming their attendance, in a form acceptable to the United States. This certification shall contain the name of the course, the date the course was taken, and the length of the course. Defendant Donovan shall satisfy this requirement by providing proof that he has attended such a training in the time period between the filing of the United States' Complaint and the entry of this Consent Decree. For all other applicable agents and employees, Village Realty shall satisfy this requirement by providing proof of their attendance at such a training within the period that is one year prior to the entry of this Consent Decree, or providing proof of their attendance at such a training within sixty (60) days of the entry of this Consent Decree. Village Realty shall pay the cost of this educational program.

31.    During the term of this Consent Decree, within five (5) days after each new agent or employee becomes involved in providing information about, showing, or selling residential dwelling units at Village Realty, Village Realty shall provide a copy of the Fair Housing Notice and Nondiscrimination Policy to each new agent or employee and secure a signed statement from each of them acknowledging that he or she has received and read the Fair Housing Notice and Nondiscrimination Policy, has had the opportunity to have questions answered about the Fair Housing Notice and Nondiscrimination Policy, and agrees to abide by the Fair Housing Notice and Nondiscrimination Policy. This statement shall be in the form of Appendix A.

32.    During the term of this Consent Decree, each new agent or employee responsible for providing information about, showing, or selling residential dwelling units at Village Realty

shall certify compliance with SIBOR and New York State fair housing educational requirements during the then current reporting cycle.

## VIII.   Compliance Testing

33.     The United States may take steps to monitor Defendants' compliance with this Consent Decree including, but not limited to, conducting fair housing tests at Village Realty, during the term of this Consent Decree.

## IX.     Monetary Damages for Aggrieved Persons

34.     Within ten (10) days of the entry of this Consent Decree, the Defendants shall deposit in an interest-bearing escrow account the sum of fifteen thousand dollars ($15,000) for the purpose of compensating aggrieved persons who may have suffered harm as a result of the Defendants' alleged discriminatory conduct (hereinafter "aggrieved persons"). This money shall be referred to as the "Settlement Fund." Within five (5) days of the establishment of the Settlement Fund, the Defendants shall submit proof to the United States that this account has been established and the funds deposited. Any interest accruing to the Settlement Fund shall become a part thereof and be utilized as set forth herein. The Defendants shall be solely responsible for any taxes assessed or owed on any interest earned on the money in the Settlement Fund.

35.     Within thirty (30) days of the entry of this Consent Decree, but no earlier than fourteen (14) days after entry, Defendants shall arrange and publish a Notice to Potential Victims of Housing Discrimination ("Notice"), as set out in Appendix B, as follows:

> (a) The Notice shall be published once as a ¼ page ad in the primary content section of the Brooklyn Spectator and once as a legal notice in the Staten Island Advance.

(b) Each Notice shall include the information set forth in Appendix B, and also contain a statement that the United States seeks information from any person who claims to have been subjected to race or color discrimination at Village Realty while inquiring about rental units or otherwise trying to rent a residential dwelling unit and invite such persons to contact the United States within six (6) months of the entry of this Consent Decree.

(c) Defendant Village Realty shall provide a copy of the publication containing such Notice to the United States within ten (10) days of the date of publication of the Notice.

36.     To the extent that such records have not already been produced to the United States, the Defendants shall produce any records in their possession, custody, or control, or that of any of their agents or employees, upon notice to counsel for the Defendants, that the United States believes to be useful in identifying persons who may be entitled to relief under this Consent Decree.

37.     Nothing in this Consent Decree shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons.

38.     Allegedly aggrieved persons shall have six (6) months from the date of the entry of this Consent Decree to contact the United States.  Based on available information and documentation, the United States shall make a preliminary determination of which persons are aggrieved and an appropriate amount of damages that should be paid to each such person from the Settlement Fund.  The United States will inform the Defendants in writing of its preliminary determinations, including the factual basis for its determinations.  The Defendants shall have

16

fourteen (14) days to review the determinations and provide the United States with any documentation or information that they believe may refute the determinations.

39.     After reviewing any information provided by the Defendants, the United States shall notify the Defendants of its final determinations as to which persons are aggrieved and the appropriate amount of damages for each.  The Defendants agree that the determinations of the United States shall be final, and Defendants hereby waive the right to contest, in this or any other proceeding, the United States' determination of who qualifies as an aggrieved person.  Defendants hereby agree that they will not seek to interfere with or oppose the United States' determinations regarding aggrieved persons and the appropriate amount of damages paid to each aggrieved person.

40.     In its letter informing the Defendants of its determination, the United States shall inform the Defendants of the amounts (plus accrued interest) that should be paid pursuant to its determination.  The Defendants shall, within ten (10) days of the receipt of the United States' determination, deliver to the United States, by overnight mail, checks payable to the aggrieved persons in the amounts recommended.  In no event shall the total amount distributed to aggrieved persons exceed the principle deposited into the Settlement Fund, plus accrued interest.

41.     When counsel for the United States has received the checks from the Defendants payable to aggrieved persons and a signed release in the form of Appendix C from the aggrieved person, counsel for the United States shall deliver the check to the aggrieved person and copies of the signed release to counsel for the Defendants.  No aggrieved person shall be paid until he or she has signed and delivered to counsel for the United States the release at Appendix C.

42.     Upon distribution, the United States will specify the amounts distributed to aggrieved persons through a separate notice ("Disbursement Notice") publicly filed with the Court. The Disbursement Notice will set forth the amounts received by each aggrieved person.  The Defendants shall not have any right to object to the disbursements identified in the Disbursement Notice.

43.     After the satisfaction of Paragraphs 35-42, above, and the expiration of the corresponding time periods, any money remaining in the Settlement Fund, including interest, shall be distributed to the United States Treasury in the form of an electronic funds transfer based on written instructions to be provided by the United States.

## X.     Civil Penalty

44.     Within ten (10) days of the entry of this Consent Decree, the Defendants shall pay a total of two thousand five hundred dollars ($2,500) to the United States as a civil penalty, pursuant to 42 U.S.C. § 3614(d)(1)(C).  This payment shall be in the form of an electronic funds transfer pursuant to written instructions provided by the United States.

45.     The civil penalty payment obligation specified in Paragraph 44 is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss.

## XI.     Record Retention and Reporting Requirements

46.     Defendants shall preserve all records related to this Consent Decree and to the sale of residential dwelling units at Village Realty.  Such documents include, but are not limited to, availability lists; applications; inquiry records; telephone logs; documents relating to offers to purchase; completed sales agreements; correspondence or notes relating to prospective purchasers;

advertisements; and web postings.  Upon reasonable notice to the Defendants, representatives for the United States shall be permitted to inspect and copy any records related to this Consent Decree to determine compliance with this Consent Decree, provided that the United States shall endeavor to minimize any inconvenience to Defendants.

47.     Within ninety (90) days of the entry of this Consent Decree, and every six (6) months thereafter for its duration, Village Realty shall deliver to the United States a report containing information relating to compliance with this Consent Decree, including the following:

(a)  Executed copies of Appendix A, to the extent not previously provided;

(b)  Copies of the training certificates required by Paragraphs 30 and 32, to the extent not previously provided;

(c)  Documentation of the implementation of the nondiscrimination policies and, if applicable, the nondiscriminatory standards and procedures discussed in Sections IV-VI, to the extent not previously provided;

(d)  Photograph(s) of the Village Realty office showing the Fair Housing Notice, and, if applicable, nondiscriminatory standards and procedures;

(e)  Copies of inquiry records, availability lists, telephone logs, and other information recorded by any means related to any inquiries regarding the availability of real property available for sale for the time period following the previous report; and

(f)  Copies of any published advertisements, brochures distributed, or information about units listed for sale at Village Realty that are available to the public,

19

whether in print or electronic form, for the time period following the previous

report.

The final report shall be submitted to the United States not later than sixty (60) days before the

date of expiration of this Consent Decree.

48.     Village Realty and/or Donovan shall notify counsel for the United States in writing

within fifteen (15) days of receipt of any housing discrimination complaint against Village Realty

or any of its agents or employees, or against Donovan, whether written or oral.  The notification

shall include the full details of the complaint, including the complainant's name, address, and

telephone number and a copy of any written complaint.  Village Realty and/or Donovan shall also

promptly provide to the United States all information they may request concerning any such

complaint and its actual or attempted resolution.

### XII.     Duration and Modification of and Non-Compliance with Consent Decree

49.     This Consent Decree shall be in effect for a period of two (2) years from the date

of its entry.  The Court shall retain jurisdiction for the duration of this Consent Decree to enforce

its terms, after which time the case shall be dismissed with prejudice.  The United States may move

the Court to extend the duration of the Consent Decree in the event of noncompliance, whether

intentional or not, with any of its terms, or if it believes the interests of justice so require.

50.     The parties shall endeavor in good faith to resolve informally any differences

regarding interpretation of and compliance with this Consent Decree prior to bringing such matters

to the Court for resolution.  However, in the event the United States contends that there has been

a failure by Village Realty or Donovan, whether willful or otherwise, to perform in a timely manner

any act required by this Consent Decree or otherwise to act in conformance with any provision

thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees that may have been occasioned by the violation or failure to perform.

51.     Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the parties.

### XIII.   Litigation Holds

52.     The parties agree that, as of the date of entry of this Consent Decree, litigation is not reasonably foreseeable concerning the matters described herein.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Consent Decree, the party is no longer required to maintain such a litigation hold.  However, nothing in this Consent Decree relieves Village Realty or Donovan of the record-keeping responsibilities required by this Consent Decree.

### XIV.   Costs of Litigation

53.     Each party to this Consent Decree shall bear its own costs and attorneys' fees.

The undersigned hereby apply for and consent to the entry of the Order:

Dated: March 30, 2021

**For Plaintiff United States of America:**

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney
Eastern District of New York

*/s/ Rachel G. Balaban*
RACHEL G. BALABAN
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201
Phone: 718-254-6028
Fax: 718-254-6081
rachel.balaban@usdoj.gov

PAMELA S. KARLAN
Principal Deputy Assistant Attorney General
Civil Rights Division

SAMEENA SHINA MAJEED
Chief

*/s/ Katherine A. Raimondo*
R. TAMAR HAGLER
Deputy Chief
KATHERINE A. RAIMONDO
Trial Attorney
Housing and Civil Enforcement Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street, NE, 8th Floor
Washington, DC  20530
Phone: (202) 305-1987
Fax: (202) 514-1116
Katherine.Raimondo@usdoj.gov

Attorneys for Plaintiff
United States of America

*For All Defendants:*

*/s/ Amy M. Monahan*
AMY M. MONAHAN
L'Abbate, Balkan, Colavita & Contini L.L.P.
 *(new address as of 4/1/2021)*
3 Huntington Quadrangle, Suite 102S
Melville, New York  11747
Tel: (516) 837-7385
amonahan@lbcclaw.com

*/s/ Georgiana Diaz*
GEORGIANA DIAZ
Chief Executive Officer, Village Realty of Staten Island Ltd.

*/s/ Denis Donovan*
DENIS DONOVAN

SO ORDERED this:

this _____ day of _____, 2021.

_____
United States District Judge
Eastern District of New York

23

## **APPENDIX A**

## **ACKNOWLEDGMENT OF RECEIPT OF [CONSENT DECREE AND] NONDISCRIMINATION POLICIES**

I acknowledge that on _____, 2021, I was provided copies of [the Consent Decree entered by the Court in *United States v. Village Realty of Staten Island Ltd., et al.,* Civil Action No. 20-CV-4647 (E.D.N.Y.),] the Fair Housing Notice, and the Nondiscrimination Policy adopted for Village Realty of Staten Island Ltd.   I have read and understand these documents and have had my questions about these documents answered.   I understand my legal responsibilities and shall comply with those responsibilities.


_____

Signature


_____

Print Name


_____

Job Title/Position


_____

Date

CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY

## APPENDIX B

## NOTICE TO POSSIBLE VICTIMS OF HOUSING DISCRIMINATION

On [     insert date     ], the United States District Court for the Eastern District of New York entered a Consent Decree resolving a lawsuit brought by the United States against Village Realty of Staten Island Ltd. ("Village Realty") and Denis Donovan ("Donovan") (collectively "Defendants") concerning alleged housing discrimination in offering units for rent.  The lawsuit alleged that the Defendants violated the Fair Housing Act by treating African Americans who visited Village Realty and inquired about units available for rent less favorably than similarly-situated white persons, primarily by:

- Offering to rent apartments on different terms and conditions to African-Americans and
- Providing different information about apartments available for rent to African-Americans

The Consent Decree establishes a Settlement Fund to make payments to compensate persons who are victims of this type of alleged discrimination.  You may be entitled to a monetary award from the Settlement Fund if you (1) are African American; (2) visited or called Village Realty to inquire about units available for rent prior to March 31, 2019; and (3) were denied the opportunity to rent a unit or provided untrue or incomplete information about available rental units.

If you believe you may be a victim based on the above criteria, or if you have information about someone else whom you believe may qualify, please contact the United States Department of Justice, no later than _____, at: 1-800-896-7743 and select menu option _____.  You may also send an e-mail to fairhousing@usdoj.gov or write to:

United States Department of Justice
Civil Rights Division
Housing and Civil Enforcement Section
4 Constitution Avenue
150 M Street, N.E., 8th Floor
Washington, D.C. 20530
Attn: DJ# #175-52-294

Your telephone message or letter must include your name, address, and, if possible, your e-mail address and at least TWO telephone numbers where you may be reached.

## APPENDIX C

## FULL AND FINAL RELEASE OF CLAIMS

In consideration for the parties' agreement to the terms of the Consent Decree they entered into in the case of *United States v. Village Realty of Staten Island Ltd., et al.*, Civil Action No. 20-CV-4647, as approved by the United States District Court for the Eastern District of New York, and in consideration for the payment of $_____, I do hereby fully release and forever discharge Village Realty of Staten Island Ltd. and its employees, agents and independent contractors, and Denis Donovan from any and all fair housing claims set forth or related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from alleged housing discrimination that I may have had against any of them for any actions or statements related to those claims through the date of the entry of the Consent Decree.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of _____, 20___.

_____
Signature

_____
Print Name